### SUNDH ELECTRIC CO. v. GENERAL ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit.    March 10, 1913.)

#### No. 150.

1. **PATENTS (§ 312\*)—SUITS FOR INFRINGEMENT—WEIGHT OF EXPERT TESTIMONY.**

While in cases relating to patents for mechanical devices the deliverances of experts are mere aids to the comprehension of the structure, and if there be dispute among them the judge can examine the device and decide for himself as to which is correct, the situation is changed when the field of electric, magnetic, and chemical patents is entered, and the court must perforce depend upon the assertions of some one who has made a profound study of the subject, and the weight to be given to the testimony will necessarily depend upon the measure of confidence which the witness inspires.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.\*]

2. **PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—ELECTROMAGNET.**

The Lindquist patents, No. 744,773 and No. 764,608, each for an alternating current electromagnet, *held* not anticipated, to involve invention, and valid as against the claim of prior invention; also infringed.

This cause comes here upon appeal from a decree of the District Court, Northern District of New York, holding two patents to be valid and infringed. The first patent, No. 744,773, was issued November 24, 1903, to David L. Lindquist, for an electric magnet; the claims

involved are 1, 2, 3, and 4. The second or junior patent, No. 764,608, was issued to Lindquist July 12, 1904, for an electromagnet; the claims involved are 1, 2, and 3. Both patents relate to alternating current electric magnets. The defenses are that the patents are invalid in view of the prior art, and because Lindquist was not the original inventor, and that the defendant does not infringe the claims in issue, when construed in the light of the prior art and of the history of Lindquist's own work on devices of this character. The opinion of the District Judge will be found in 198 Fed. 116.

Charles Neave and Wm. G. McKnight, both of New York City, for appellant.

Park Benjamin and Alfred Wilkinson, both of New York City, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The opinion of Judge Ray is a very full one. It sets forth in detail the substance of the various patents and summarizes the main contentions of the opposing sides. The questions involved are questions of fact, invention, anticipation, equivalency, infringement, and no discussion of these questions, as presented here, however elaborate, would add anything to the exposition of patent law. For these reasons we refrain from undertaking any exhaustive statement of the testimony bearing on these questions of fact; the opinion of the District Judge sets them forth sufficiently for any one to understand in a general way what this controversy is about, and the official reports need be incumbered with nothing further.

The contention that Lindquist was not the first inventor is based upon testimony as to a machine which is referred to as the "Ihlder prior magnet." It is asserted that this machine was completed and submitted to a satisfactory test at the Yonkers works of the Otis Elevator Company. The four principal witnesses were engineers in the employ of that company. Drawings, blueprints, and other records were produced to support their testimony. Of this testimony generally—it covers many pages of the record—it is sufficient to say that it comes far short of satisfying us that Ihlder embodied the Lindquist device in a usable structure before Lindquist's date of invention. This conclusion is strengthened by the consideration that it seems unaccountable why the carefully conducted corporation—and the evidence shows it to be such—in which these witnesses were employed should have paid a large sum of money for Lindquist's device, if its own employés had been making the same thing a year or more before he applied for a patent. Our conclusion is also fortified by the circumstance that Ihlder himself, who is alleged to have made this prior magnet, was not called as a witness. Apparently, although he was abroad, there was time and opportunity to take his testimony.

[1] With regard to the other questions of fact in the case, there are difficulties which are not prominent in the one just disposed of. In the opening of appellant's brief reference is made to a suggestion

in appellee's argument that the court is to weigh the relative qualifications of the opposing experts, and it is said:

"The arguments or contentions of the experts are of no importance.  Counsel are the ones to make arguments, and the court in passing upon those arguments will not accept the conclusions of those experts, no matter who they may be, but will look to the facts."

Generally, of course, this is so.  In the case of a mechanical device, like a multiple drill or a typewriting machine, the deliverances of the experts are mere aids to the comprehension of the structure. If there be dispute among them as to how various parts are corelated and how they act, a judge can examine the device and decide for himself as to which is correct.  The decision may be erroneous, but it is the result of an independent mental process applied to facts, which may be determined by the exercise of the judge's independent senses.

But when we come into the field of electric, magnetic, and chemical patents the situation is changed.  There are things which the independent senses cannot appreciate, which cannot be seen or felt or heard.  The flow or flux of electric or magnetic currents, the reactions of bodies into some chemical union or disunion, are matters in which a court must perforce depend upon the assertions of some one who has made a profound study of the matter, and the weight to be given to the testimony will necessarily depend upon the measure of confidence which the witness inspires.  Sometimes, when it is shown that some statement of a witness as to these unseen forces is contrary to the consensus of accepted expert opinion, it may be rejected.  Possibly such rejection even may be error, because the witness may be the one who has himself discovered what the others have overlooked. But when there is no such satisfactory way to dispose of the contentions of an expert witness, a court is helpless to criticise them.

In this very case the writer does not know enough about the subject-matter of electric and magnetic flow and flux to determine whether some particular statement relating thereto, propounded with great positiveness by an expert, is or is not sound.  If, instead of the consideration which he has been able to give to this case in the past few weeks, he should devote six months exclusive of all else to a study of electric and magnetic action, he would certainly be in no better condition, possibly in a worse one, because he might acquire that sort of half knowledge about an abstruse scientific subject, which is sometimes more misleading than none at all.  This is one weak part of the judicial side of our patent system.  There should be some way in which a court could have the assistance of absolutely independent scientific judgment on these obscure questions.  The recent equity rules for the Southern district of New York have suggested a way to secure this, with assent of both parties to a cause, which it would seem the members of the patent bar who appear in causes like this might help to make effective.

[2] Returning now to the cause at bar.  It is filled with obscure scientific questions of the sort above referred to.  To illustrate:  In considering the senior patent in suit in connection with an earlier

patent to Lindquist, much is made of what is called "symmetry" and "dissymmetry." So far as this relates to geometric symmetry of parts, which the court can see, it would have no difficulty in deciding whether it exists, or not, in the structure. But it appears that there is also such a thing—or such an idea—as magnetic symmetry, which the court cannot see. Whether that is or is not present in a structure it cannot decide for itself. Again: A prior patent (Schuckert) is relied on as negativing invention. One expert says that with this before him a "skilled electrician" could have produced the Lindquist device. The other expert says he could not; that, so far as any practical teaching is concerned, the Schuckert patent is the mere skeleton of a dream. This court is not a "skilled electrician," and cannot see for itself what could or could not have been made out of the suggestions of that patent.

The only thing possible under these circumstances is carefully to consider the contentions of the opposing experts, not generally merely, but specifically as to each point of difference, examining the contention of each on that point, with the criticism of that contention by the other, and then deciding which, upon the whole, has the best of the argument. This we have done, and have reached the conclusion that there is nothing in the prior art which deprives either patent of validity, or that so restricts the claims in issue that defendant's device can escape infringing them.

The decree is affirmed, with costs.